# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 11 C 7401 |
| v. ) | |
| ) | |
| FUERTES SYSTEMS LANDSCAPING, INC., et al., ) | Judge Thomas M. Durkin |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION & ORDER

Plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (together, the "Funds"), along with the Funds' administrator James S. Jorgensen, sued defendants Fuertes Systems Landscaping, Inc., Fuerza Concrete, Inc., Hacienda Landscaping, Inc., and Rafael Hurtado, to recover delinquent contributions and other amounts allegedly owed to the Funds pursuant to Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(e)(1) & (2), 1145.

Currently before the Court is plaintiffs' motion for summary judgment. R. 113. In a status report filed on February 16, 2018 addressing defendant Hurtado's bankruptcy proceedings, plaintiffs explain that they have reached a tentative settlement that will resolve this case as to defendants Hurtado, Fuertes, and Fuerza. R. 172. Plaintiffs represent that "the sole remaining issue left for the Court

to resolve" if the settlement proceeds as expected "will be the alleged liability of Defendant Hacienda Landscaping, Inc." *Id.* The Court therefore addresses only the portion of plaintiffs' motion relevant to Hacienda's joint and several liability. Plaintiffs maintain that summary judgment is appropriate on the issue of whether Hacienda is jointly and severally liable as a single employer or alter ego of Fuertes.

For the reasons set forth below, the Court denies plaintiffs' motion for summary judgment as to Hacienda's joint and several liability. The Court denies without prejudice the remaining portion of plaintiffs' motion in light of plaintiffs' representations in the February 16 status report.

## Background[1]

---

[1] The Court cites Hacienda's Response to Plaintiffs' Statement of Uncontested Facts (R. 147) as HR ¶ __; Fuertes, Fuerza, and Hurtado's Response to Plaintiffs' Statement Uncontested Facts (R. 153) as FR ¶ __; Plaintiffs' Reply to Fuertes, Fuerza, and Hurtado's Additional Statement of Uncontested Facts (R. 159-1) as PR-Fuertes ¶ __; Plaintiffs' Reply to Hacienda's Additional Statement of Uncontested Facts (R. 159-2) as PR-Hacienda ¶ __; and Plaintiffs' Statement of Additional Facts (R. 159-3) as PAF ¶ __. The Court cites exhibits in support of Plaintiffs' Statement of Uncontested Facts (R. 116) as P-Ex. __. The Court cites exhibits in support of Plaintiffs' Statement of Additional Facts as P-Supp-Ex. __. The Court cites exhibits in support of Hacienda's Additional Statement of Uncontested Facts as Hacienda-Ex. __.

The Court addresses at the outset a number of admissibility objections raised by defendants. Defendants first object to the authenticity of certain exhibits relied on by plaintiffs. But Fuertes employees authenticated these documents during their depositions. Plaintiffs' Statement of Additional Facts and supporting exhibits contain the relevant authenticating testimony. *See* PAF ¶¶ 2, 6-10 & P-Supp-Exs. B, H, I, J, K, L. On September 19, 2016, the Court denied defendants' motion to strike Plaintiffs' Statement of Additional Facts. R. 167. The Court explained that "[t]he ten additional statements of fact in the reply properly and concisely relate to the facts and argument set forth in Defendants' response." *Id.* The Court gave defendants 14 days to file a surreply with respect to Plaintiffs' Statement of Additional Facts, *id.*, which they never filed. The Court therefore deems those additional facts admitted.

### A. Fuertes' Business and Collective Bargaining Agreement

During the relevant period of 2008 to 2012, Fuertes performed residential and public construction work. FR & HR ¶ 20. Fuertes entered into a collective bargaining agreement ("CBA") with the Construction and General Laborers' District Council of Chicago and Vicinity union, which binds Fuertes to certain trust agreements with the Funds. FR & HR ¶¶ 5, 11, 12. Those trust agreements in turn require Fuertes to submit monthly benefit reports and contribution payments "for each hour worked by all Employees covered by [the CBA]." *Id.*

### B. Relationship between Fuertes and Hacienda

During the relevant period of 2008 to 2012, Hacienda was a landscaping company owned by defendant Hurtado's sister Maria Guzman. FR & HR ¶¶ 21, 48; PR-Hacienda ¶ 2. Hacienda's registered address was Guzman's home address. FR & HR ¶ 49.

---

Defendants also object to factual statements for which plaintiffs omitted certain cited deposition pages from their initial set of exhibits (P-Exs.). Although the Court agrees that plaintiffs' initial set of summary judgment exhibits were incomplete, because plaintiffs included the missing pages in exhibits to their Statement of Additional Facts (*see* P-Supp-Exs.) and defendants had access to all cited transcript pages throughout the litigation, the Court declines to exclude those facts from its consideration.

Finally, defendants object to the admissibility of all documents authenticated by the affidavit of the Funds' field representative James Fosco, including the September 2012, April 2013, February 2014 agreed-upon procedure reports ("AUP reports") and trust agreements discussed below. But the Court already denied defendants' motion to strike the AUP reports. R. 127. And a Supplemental Affidavit of James Fosco clarifies his personal knowledge and competency to attest to the statements and documents introduced through his original affidavit, including the AUP reports and trust agreements. *See* P-Supp-Ex. D. Accordingly, the Court finds documents authenticated by Fosco admissible.

The precise relationship between Fuertes and Hacienda is disputed by the parties, in particular based on two affidavits Guzman submitted on behalf of herself and on behalf of Hacienda in support of Hacienda's opposition to summary judgment. Hacienda-Exs. 1, 16. These affidavits contest most of the factual points supported by the testimony of Fuertes employees on which plaintiffs rely.

To begin, Guzman's actual managerial authority over Hacienda is contested. During her deposition, Guzman could not recall many details about Hacienda's operations, including what tools or equipment it rented, how many employees it had, or the names of three of its drivers. FR & HR ¶¶ 53-54. In Guzman's affidavit submitted on behalf of herself in support of Hacienda's summary judgment opposition, Guzman represented that based on her deposition notice, she was not aware that she would be asked questions about Hacienda's business and so was not prepared to answer those questions. Hacienda-Ex. 16 ¶ 20.

Guzman's affidavit on behalf of Hacienda sets forth significantly more detail than her deposition about Hacienda operations. Hacienda-Ex. 1. Guzman represented that Hacienda at all times had its own insurance coverage, offices, storage space, computer system, office equipment, tools, and bank accounts. PR-Hacienda ¶ 6; Hacienda-Ex. 1 ¶¶ 12, 13, 14, 15, 16. Guzman's affidavit denied that Hacienda ever received money from Fuertes. PR-Hacienda ¶ 5.

The extent of overlap among Fuertes and Hacienda management and employees also is contested by the parties. The parties dispute whether Hurtado told Fuertes employees that Hacienda was his other company, FR & HR ¶ 58, and

whether he told them that union employees would work for Fuertes and non-union employees would work for Hacienda. FR & HR ¶ 41; P-Ex. K at 34-36; *see also* PR-Hacienda ¶ 3 (Hurtado testified that he had no involvement in Hacienda). The parties also dispute whether and to what extent Edgar Rubio acted as a superintendent for both Hacienda and Fuertes and directed work to employees of both companies. FR & HR ¶¶ 56-57.

It is undisputed that for part of the relevant time period, Guzman served as the office manager for Fuertes while also serving as president of Hacienda. FR & HR ¶¶ 22, 24; PR-Hacienda ¶ 2. But her responsibilities as office manager of Fuertes are contested. It is clear that she processed weekly payroll for Fuertes, recorded daily employee hours, completed and submitted union benefit reports, filed and paid bills, and signed and issued checks. FR & HR ¶ 24. But it is disputed whether Guzman had authority to decide what information was placed on Fuertes payroll records or union reports, *id.*, whether she was an officer of Fuertes, FR & HR ¶ 23, whether she attended any corporate meetings for Fuertes, *id.*, whether and to what extent she was paid by Fuertes for her work, FR & HR ¶ 25, and to what extent Fuertes filed or reported taxes for that work, *id.* & PR-Hacienda ¶ 11.

In addition to disputes as to management and control overlap, it is disputed whether and the extent to which Hacienda and Fuertes shared storage, parking facilities, and equipment. FR & HR ¶¶ 51-52; PR-Hacienda ¶ 8.

Finally, there is a dispute as to whether Fuertes employees were ever paid by Hacienda for work performed for Fuertes. Two Fuertes employees testified that on

at least one occasion, they were issued checks from Hacienda for work performed for Fuertes. FR & HR ¶ 40; P-Ex H at 10; P-Ex F at 23-24. Guzman denies that either was paid by Hacienda for Fuertes work. HR ¶ 40.

### C. Default of Installment Note and Personal Guaranty

In August 2011, because Fuertes did not have money to pay benefit contributions to the Funds for May and June 2011, it entered into an installment note ("note") to finance the $60,634.10 due to the Funds for those two months. FR & HR ¶ 17; PR-Fuertes ¶ 7. Simultaneously with the execution of the note, Hurtado signed a guaranty and indemnification agreement providing:

> The undersigned guarantees, absolutely and unconditionally: (a) the payment when due of the entire principal indebtedness and all interest evidenced by the Note [identified above as $60,634.10] during the twelve (12) month payment period including interest and liquidated damages for late or unpaid payments due on the Note . . . . The Guarantor also agrees to be personally liable for all monthly benefit contributions, union dues, or wages owed from the Company to the Funds, the District Council, all ancillary funds, and/or the participants that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all interest, liquidated damages, audit costs, attorneys' fees and costs.

P-Ex. B-7 at 1; FR & HR ¶ 16; PR-Fuertes ¶ 7. Hurtado defaulted on the note, and the Funds filed this suit. FR & HR ¶¶ 13, 18, 19.

### D. AUP Reports and Briggs Report

Fuertes had an obligation based on its trust agreements with the Funds to submit its books and records to the Funds on demand to determine benefit contribution compliance. FR & HR ¶ 14. After plaintiffs filed suit, Fuertes

6

submitted its books for such a review for the period of January 1, 2008 through January 31, 2012. *Id.*

Based on a review of the books Fuertes turned over, the accounting firm Levinson Simon Hein & Bilkey issued a series of AUPs purporting to calculate the total amount owed by Fuertes to the Funds. A second revised AUP issued in February 2014 calculated a total of $4,492,704.10 in unpaid contributions plus liquidated damages, interest, and audit costs. FR & HR ¶ 68. Defendants in response commissioned a report by certified public accountant William D. Briggs (the "Briggs report"). FR & HR ¶ 68; PR-Fuertes ¶¶ 4, 12. The Briggs report calculated unpaid contributions by Fuertes of $580,090 for the period of 2008 through June 30, 2013. PR-Fuertes ¶ 4.

### E. Plaintiffs' Summary Judgment Motion

Plaintiffs initially moved for summary judgment on their claim for unpaid contributions, liquidated damages, audit costs, and interest in the amount of $4,492,704.10, and also sought a determination of joint and several liability as to all defendants. R. 113. In a February 16, 2018 status report addressing Hurtado's bankruptcy proceedings, plaintiffs represented that they "anticipate filing a Stipulated Judgment as to the alleged liabilities of corporate Defendants" Fuertes and Fuerza, as well as a dismissal without prejudice of Hurtado. R. 172. In light of this status report, the Court will address only the portion of plaintiffs' summary judgment motion seeking to hold Hacienda jointly and severally liable for Fuertes' liability to the Funds. *See id.*

**Standard**

The Federal Rules of Civil Procedure "explicitly allow for 'partial summary judgment.'" *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). "At the summary-judgment stage, the court can properly narrow the individual *factual* issues for trial by identifying the material disputes of fact that continue to exist." *Id.* (emphasis in original).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Analysis**

Plaintiffs contend that Hacienda should be found jointly and severally liable with Fuertes based on two related doctrines. First, they rely on the single employer doctrine, which holds that "when two entities are sufficiently integrated, they will

be treated as a single entity for certain purposes." *Central Ill. Carpenters Health & Welfare Trust Fund v. Olsen*, 467 F. App'x 513, 517 (7th Cir. 2012); *accord Anderson v. Liles*, 774 F. Supp. 2d 902, 909 (N.D. Ill. 2011) ("two separates entities operating side-by-side may be treated as one in certain circumstances"). "To determine whether two nominally separate business entities are a single employer, one must examine four factors . . . : (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." *Trs. of Pension, Welfare and Vacation Fringe Benefit Funds of IBEW Local 701 v. Favia Elec. Co., Inc.*, 995 F.2d 785, 788 (7th Cir. 1993); *accord Olsen*, 467 F. App'x at 517. The Court weighs the totality of the circumstances in making this determination. *Favia Elec.*, 995 F.2d at 788. "[A] plaintiff is not required to establish every factor in order for a court to find two entities constitute a single employer." *Shales v. Schroeder Asphalt Serv., Inc.*, 2013 WL 2242303, at *4 (N.D. Ill. May 21, 2013). If two entities "are determined to constitute a single entity," they are "jointly and severally liable for contributions owed" pursuant to a CBA. *Id.* (citing *Olsen*, 467 F. App'x at 517).

Second, plaintiffs rely on the alter ego doctrine. The alter ego doctrine is similar to the single employer doctrine but turns on the issue of "unlawful motive or intent." *Favia Elec.*, 995 F.2d at 789. "[A]n attempt to avoid the obligations of a collective bargaining agreement" by paying employees through a separate entity evidences such intent. *Id.*

9

In support of plaintiffs' argument that Hacienda and Fuertes are a single employer, plaintiffs maintain that the companies shared management and control (with Hurtado in charge and Rubio as a superintendent) and operations (including equipment, storage, and parking). Even though the companies undisputedly have different owners on paper, plaintiffs maintain that Guzman's "limited knowledge of her company's day-to-day operations calls into question the extent of her actual managerial authority." R. 114 at 12. Plaintiffs further argue that Hacienda and Fuertes qualify as alter egos because Hacienda operated, at least in part, to avoid Fuertes' contractual obligations under the CBA. Plaintiffs allege that covered Fuertes employees were paid through Hacienda to avoid Fuertes having to pay benefits, dues, and union scale wages for those employees.

But these arguments are not supported by undisputed facts. To the contrary, they are supported primarily by the deposition testimony of Fuertes employees. And, as set forth above, primarily through the two affidavits that Guzman submitted in opposition to summary judgment, Hacienda disputes nearly every fact relied on by plaintiffs. These include facts directly bearing on the entities' interrelation of operations, common management, and centralized control, as well as whether Hacienda paid Fuertes employees for covered work in order to avoid Fuertes' CBA obligations—*i.e.*, key facts relevant to the single employer and alter ego doctrines.

The testimony in Guzman's affidavits is not so conclusory or generalized that the Court can ignore it for purposes of summary judgment. And the credibility

issues plaintiffs raise with respect to Guzman (*see* R. 159 at 3-6)—including based on her lack of knowledge about Hacienda in her deposition—are subjects for cross-examination at trial, not reasons for disregarding her testimony altogether. The issue of Hacienda's status as a single employer or alter ego of Fuertes boils down to a contest of he-said, she-said that is inappropriate for summary judgment. Accordingly, Hacienda's joint and several liability is an issue that must be tried.

**Conclusion**

For the foregoing reasons, the Court denies plaintiffs' motion for summary judgment (R. 113) with respect to the issue of Hacienda's joint and several liability. The Court denies without prejudice the remaining portions of plaintiffs' motion for summary judgment in light of plaintiffs' representations in the February 16, 2018 status report (R. 172).

ENTERED:

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: February 21, 2018

11